IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>JAMES EDWARD ALLUMS,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE TESIMONY<br><br><br><br><br><br>Case No. 2:08-CR-30 TS |

This matter is before the Court on Defendant's Motion to Exclude Testimony of William Shute, filed on November 3, 2008.[1]  Defendant is charged with violations of federal law related to three robberies allegedly committed by Defendant.  The government proposes to call William Shute as an expert witness to testify regarding a technique whereby phone calls allegedly made from Defendant's cell phone around the time of the robberies can be used to determine the approximate location of Defendant when making the calls.  Shute testified at a *Daubert*[2] hearing regarding the methodology used in arriving at his conclusions.  The Court finds the proposed testimony by Shute

---

[1]Docket No. 65.

[2]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

to be both reliable and relevant for the reasons set forth below and will deny Defendant's Motion in Limine.

## I.  STANDARD OF REVIEW

The United States Supreme Court has stated that Fed. R. Evid. 702 requires district courts to act as gatekeepers in order to assure that all expert testimony is both reliable and relevant,[3] and has extended that gatekeeping role beyond scientific evidence to all expert testimony.[4]  Expert testimony is to be admitted when the Court has determined that "the expert's proposed testimony is [specialized] knowledge, and . . . the evidence 'fits' the current issue and will assist the jury."[5] The Court must make a determination of reliability by inquiring "whether the reasoning or methodology underlying the testimony is scientifically valid."[6]  The Court must also make a determination of relevance by inquiring "whether proposed testimony is sufficiently relevant to the task at hand."[7]  Because Defendant makes no claims regarding the relevance of Shute's testimony, the Court will deal only with the reliability of the proposed testimony.

## II.  BACKGROUND

Defendant, in the Superceding Indictment, is charged with: (1) a Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), for allegedly robbing a Salt Lake County K-Mart Store; (2) Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d), for allegedly robbing a branch of the Salt

---

[3]*Daubert*, 509 U.S. at 589.

[4]*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999); *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004).

[5]*Daubert*, 509 U.S. at 592.

[6]*Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005).

[7]*Id.*

Lake City School Credit Union; and (3) Attempted Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d), for allegedly attempting to rob a Salt Lake County branch of Home Savings Bank.

The government has obtained what it alleges are the phone records for Defendant's cell phone, and has data regarding phone calls made from that cell phone on the days of the robberies. In addition, the government has obtained data from the cell phone service provider, which contains information regarding the cell tower to which the cell phone initially connected in placing the phone calls.

At the February 24, 2009, hearing, Shute testified that he identified the originating cell tower for each of the calls in question. Shute testified that he purchased a cell phone from the same service provider as the Defendant and placed the phone into "engineering mode," where the phone display showed the cell tower to which it was currently connected. Using that phone and another device called a Stingray, which also tracked which cell tower was the strongest at any geographical position, Shute drove for some time around the neighborhoods surrounding the cell towers in question and determined an approximate range for each cell tower. Specifically, Shute testified that he was able to determine the approximate distance from the originating cell tower where the cell phone and Stingray switched from the originating cell tower to another cell tower. Shute testified that this method allows him to determine, with a reasonable degree of certainty, a fairly narrow geographical location where an individual is located while a cell call is being placed.

Shute testfied that he has been a special agent with the FBI for nine years, and that his specific expertise is in tracking people using cell tower records. He testified that he has undergone two official FBI training courses on how cell technology and cell networks function, as well as five additional training courses on radio frequency theory and the equipment needed for tracking and

analyzing cell calls.  He also testified that he is currently working on a Masters degree in geospatial technology at Pennsylvania State University.

Regarding the method utilized in this case, Shute testified that he has used it three hundred times, and that he has provided cell phone analysis similar to this in thirty-five cases, testifying as an expert eight times in five different courts.  He testified that he functions as an instructor for the FBI in cell technology tracking, instructing other agents on how to utilize the methodology.  He has taught a three-day course five times, and those he has trained have used the methodology over five hundred times.

## III.  DISCUSSION

The Supreme Court, in *Daubert*, laid out four general criteria for determining the validity of an expert's methodology: (1) whether the theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has general acceptance.[8]

The Court finds that the methodology utilized by Shute is reliable.  The methodology has been utilized in hundreds of prior investigations, allowing the FBI to use cell tower data to successfully track and apprehend fugitives.  The methodology has therefore been tested, and has general acceptance in the area of law enforcement.  While Shute was not able to identify any peer-review process that the methodology has undergone, nor the rates of error, the Court finds that the success achieved by Shute and others in catching fugitives while using this methodology is sufficient to establish the methodology's reliability.

---

[8]*Daubert*, 509 U.S. at 593-94.

Defendant argues that tracking fugitives is not the same as analyzing historical data, but Shute testified that once a cell call has been placed, it becomes historical data, so the available data is precisely the same, and that the analysis is also the same.

Defendant argues that Shute did not account, in his analysis, for weather conditions or the possibility of high call volumes on the days that Defendant allegedly placed the calls. Defendant also argues that the nature of cell tower signals is such that a cell tower at a much longer distance from the cell caller could be the originating cell tower if a number of plausible circumstances were in play. Defendant also points out that one of the cell towers allegedly utilized by Defendant's cell phone was torn down prior to Shute's 2008 analysis, and that Shute had previously stated that he needed to be able to physically inspect the cell tower in order to complete his analysis. These arguments, and others that might cast doubt on Shute's conclusions in this specific case, are legitimate questions that would be appropriately raised on cross-examination of Shute, at trial. However, they do not override the Court's finding that Shute's methodology is reliable under *Daubert*.

Defendant raises questions regarding whether Shute should be qualified as an expert, arguing that Shute's training has been limited to "a grand total of seven weeks and four hours of training" and that Shute has not provided evidence of: (1) accreditation or certification of the training classes; (2) Shute's own accreditation or certification in the area of alleged expertise; or (3) the textbooks used in the training classes.[9] In short, Defendant argues that Shute's experience does not rise to the level of specialized skill, required to qualify him to offer expert testimony. The Court disagrees. The evidence shows that Shute has been trained by law enforcement agencies and other related

---

[9]Docket No. 130 at 5.

entities on the methods used daily by those agencies.  The evidence also shows that Shute has

successfully used the methodology which is the subject of the proposed expert testimony in over

three hundred cases, and that law enforcement personnel trained by Shute have successfully used the

methodology in over five hundred cases.  The Court finds that Shute has sufficient specialized skill

to be qualified as an expert for the purposes of his proposed testimony.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Exclude Testimony of William Shute (Docket No.

65) is DENIED.

DATED   March 24, 2009.

BY THE COURT:

_____

TED STEWART
United States District Judge